**In re E.T.A. A.A., Appellant.**

**No. 02–FS–774.**

District of Columbia Court of Appeals.

Argued Nov. 3, 2004.

Decided Aug. 11, 2005.

Robert J. Warner, appointed by the court, for appellant.

Stacy L. Anderson, Assistant Attorney General for the District of Columbia, with whom Robert J. Spagnoletti, Attorney General, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee (the District of Columbia).*

Before SCHWELB, WAGNER,** and REID, Associate Judges.

Opinion for the court by Associate Judge SCHWELB.

* At the time the briefs were filed, Ms. Anderson, Mr. Spagnoletti and Mr. Schwab were Assistant Corporation Counsel, Corporation Counsel and Deputy Corporation Counsel, respectively. Since that time, the Mayor of the District of Columbia has issued an executive order redesignating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia.

*See* Mayoral Order No.2004–92, 51 D.C.Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We therefore employ these attorneys' present titles.

** Judge Wagner was Chief Judge of the court at the time this case was argued. Her status changed to Associate Judge on August 6, 2005.

SCHWELB, Associate Judge:

A.A. is the mother of E.T.A., who was born on May 26, 2000. She appeals from an order of the Superior Court issued on May 17, 2002, committing E.T.A. to the custody of the Child and Families Service Agency (CFSA) on the basis of a finding that E.T.A. was a neglected child. Because the mother has failed to present us with a record from which we can determine whether error occurred, and because her counsel has failed over a protracted period to utilize remedies for the unavailability of a transcript, we affirm.

## I.

The trial court's finding that E.T.A. was a neglected child was based on evidence that, due to her mental incapacity, the mother was unable to discharge her parental responsibilities vis-a-vis E.T.A. On August 7, 2002, the mother's present attorney was appointed by the court to represent her on appeal, and counsel was directed to take steps to secure the transcripts of the evidentiary hearings in the case. Two months later, counsel submitted a voucher for these transcripts. On August 8, 2003, the Superior Court's Reporting and Recording Division notified the mother's attorney that the transcripts of proceedings on March 26–28, 2002, April 29, 2002, and May 17, 2002, could not be prepared because there had been a mechanical malfunction of the recording equipment. Notwithstanding this information, counsel took no steps pursuant to D.C.App. R. 10(c) and 10(d) to prepare a statement of proceedings and evidence in lieu of the unavailable transcripts.

In due course, the mother's attorney and counsel for the District of Columbia filed their briefs. Because there was no evidentiary record, counsel were unable to, and did not, cite to the record as required by D.C.App. R. 28(e). The District correctly pointed out in its brief that the mother's claims raised fact-intensive issues that could not be resolved without a transcript. The District noted that the mother's attorney had made no attempt to reconstruct the record in conformity with this court's Rules. No reply brief was filed on behalf of the mother.

When the parties appeared for oral argument on November 3, 2004, there was no record before the court from which the court could determine the validity or lack thereof of the mother's substantive contentions. On November 4, 2004, this court entered an order directing counsel to address the question whether the record should now be remanded to the trial court for preparation of a statement of proceedings and evidence pursuant to Rules 10(c) and 10(d). Counsel have now submitted supplemental memoranda.

 The judgment of the trial court is presumed to be correct, and it is incumbent upon the appellant to provide this court with a record which affirmatively shows that error occurred. *Cobb v. Standard Drug. Co.*, 453 A.2d 110, 111 (D.C. 1982). Where, as here, a verbatim transcript is unavailable, the appellant has the option to prepare a substitute statement pursuant to Rule 10(d); if she fails to do so, she forfeits any claim that she has been prejudiced by the absence of a transcript. *Cole v. United States*, 478 A.2d 277, 283–84 (D.C.1984).[1] In this case, counsel for the

---

1. We went on to explain in *Cole* that
 [w]hen an appellant refuses to make reasonable efforts to prepare a 10 [(d)] statement from the best available means, this court will not entertain a claim that the

record on appeal is insufficient to permit meaningful review. *Herndon v. City of Massillon*, 638 F.2d 963, 965 (6th Cir.1981) (per curiam) ("a new trial is not appropriate where the lack of a record is the only

mother provided no reasonable explanation for his failure since August 2003 to follow the procedure specified in Rule 10(c) and (d).[2] More than three years have now elapsed since the proceedings for which, as a result of the mechanical failure of the trial court's recording equipment, no transcript is available. This delay, almost half of which occurred *after* the mother's counsel was apprised of the malfunction, has obviously made it more difficult to reconstruct the record, to the prejudice of E.T.A. and the District. *See Cole,* 478 A.2d at 286 n. 13 ("a significant lapse of time between the trial and the preparation of a [10(d)] statement will weigh against reliance on the statement").

■ We recognize that the mother was not personally at fault either with regard to the malfunction of the recording machinery or in relation to her attorney's failure to take the necessary steps to remedy the lack of a transcript. But "[i]n the District of Columbia and generally, the acts and omissions of counsel are imputed to the client even though detrimental to the client's cause." *Levi v. District of*

*Columbia,* 697 A.2d 1201, 1205 (D.C.1997) (quoting *Ry. Express Agency, Inc. v. Hill,* 250 A.2d 923, 926 (D.C.1969)) (internal quotation marks omitted); *Newsome v. District of Columbia,* 859 A.2d 630, 631 (D.C.2004) (per curiam). Although, there is an "outrageous conduct" exception to this general rule, *Newsome, id.* at 631, and although we recognize the importance in principle of the parental rights being asserted by the mother, we conclude that on the record before us, counsel's failure to prepare a statement of proceedings and evidence must be imputed to his client.

## II.

In its post-argument submission, the District has brought to our attention the following facts, none of which is disputed by the mother's attorney: For all but approximately three months of her life, E.T.A. has been in foster care and has lived in the home of the same foster mother. On October 28, 2002, the foster mother filed a petition to adopt E.T.A. E.T.A.'s father has consented to the adoption, and following an evidentiary hearing, the trial judge in the adoption case issued an order

error charged and where the appellant made no effort to reconstruct the missing record nor to give any cause for that failing"); *see United States v. First National Bank of Mitchell,* 691 F.2d 386, 387 (8th Cir.1982) (per curiam); *see generally* 9 J. MOORE, MOORE'S FEDERAL PRACTICE para. 210.06[1] (1983). Moreover, in cases where there is an incomplete transcript and appellant claims that a specific trial court error merits reversal, this court will not consider the substance of the appellant's representations about the alleged error, unless the transcript supports those representations or the appellant has made efforts to supplement the record pursuant to Rule 10(j). *See Cobb, supra,* 453 A.2d at 111–12; *United States v. Beliard,* 618 F.2d 886, 888 (1st Cir.1980).

478 A.2d at 284 (additional citation omitted). *See also* 20 MOORE'S FEDERAL PRACTICE § 310.30[1] (3d ed. 2005) ( "... a party must make an attempt to reconstruct

the record. If the party fails to comply with the procedures for reconstructing the record, the affected issues will not be subject to review by the [appellate] court."). (Footnotes omitted.)

2. The mother's counsel argues that

any statement by appellant and appellee of the facts will be nothing more than another recitation of their view of the facts, stated in their briefs, which will leave this [c]ourt with two contradictory statements.

If this court were simply to take the facts from the mother's brief (or even from both briefs), without a systematic effort to reconstruct the record with the aid of the trial judge, "our review [would be] turned into an exercise in creative imagination." *Cole,* 478 A.2d at 282 (quoting *United States v. Workcuff,* 137 U.S.App. D.C. 263, 265, 422 F.2d 700, 702 (1970) (per curiam)).

waiving the mother's rights. *See In re E.A.*, No. N–893–00 (Super.Ct.D.C. Sept. 22, 2004). It also appears that as of the date of argument, E.T.A. had had no contact with the mother for the past year and a half.

In light of the foregoing facts, it is readily apparent that regardless of any action that may be taken by the Superior Court or by this court in the instant neglect case, the mother's rights, if any, vis-a-vis E.T.A. will be determined in the adoption case. The court in that case having overruled the mother's refusal to consent to E.T.A.'s adoption, there is no reasonable possibility that E.T.A. will be returned to the mother's custody in the near future. Thus, unless this court were to order an immediate return of E.T.A. to her mother's custody—a most improbable supposition, in light of the child's history and lack of contact with the mother—our disposition of the adjudication of neglect is not likely to affect the mother's opportunity to exercise her parental rights vis-a-vis E.T.A. This is important because, if custody of E.T.A. were at stake in the neglect proceeding, and if a related issue were not being adjudicated in the adoption case, the argument for overlooking counsel's failure to prepare a statement of proceedings and evidence, and for giving counsel another opportunity to do so, would be substantially more persuasive.

We recognize that the mother has the right to appeal from an adjudication of neglect even if reversal of that adjudication would not affect her rights vis-a-vis her daughter. "[T]he adjudication of neglect constitutes a permanent, and significant, stigma." [3] *See In re E.R.*, 649 A.2d 10, 12 (D.C.1994) (quoting *In re H. Chil-*

*dren*, 156 A.D.2d 520, 548 N.Y.S.2d 586, 587 (2d Dep't 1989)). Moreover, the adjudication might indirectly affect the mother's prospects of success in any potential future neglect proceeding. *Id.* In the present case, however, the mother's counsel acknowledges in his brief that her parental rights vis-a-vis two of her other children have been terminated in previous judicial proceedings in Prince George's County, Maryland. Any incremental reputational harm that the mother would suffer as a result of the affirmance of the neglect adjudication in this case would not be sufficiently substantial to warrant a departure from the general rule that the acts and omissions of an attorney are imputable to the client.

In its post-argument submission, the District

opposes appellant's request to remand this case to the trial court because of the amount of time that has passed and the resulting prejudice to E.T.A. and the government. It has been four years since E.T.A. was committed to CFSA and placed in foster care, it has been two and one half years since the neglect trial, it has been ... more than [a] year since appellant learned that the transcripts were not available, and it has been eight months since the government advised appellant of the procedures for reconstructing the record. During this time, appellant has sat on whatever rights she may have had to a complete record and, because of this lapse in time, it is no longer in E.T.A.'s best interest for appellant to be given a belated opportunity to challenge the trial court's neglect finding.

---

**3.** We note, however, that in this case, the court's finding of neglect was based on the mother's mental illness. It should not be viewed as a "pejorative characterization" or

as an indication of "moral depravity." *In re E.H.*, 718 A.2d 162, 169 (D.C.1998) (citation omitted).

The District notes that "protracted stays in [foster] care ... may deprive [neglected] children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens." *In re Application of L.L.*, 653 A.2d 873, 887 (D.C.1995) (quoting *Smith v. Org. of Foster Families*, 431 U.S. 816, 836 n. 37, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977)) (ellipsis omitted). In our view, this argument is more germane, at least in this case, to the adoption proceeding, in which the uncertainties of protracted foster care are more likely to be addressed and finally resolved, than to the neglect case, in which, given existing realities, the mother's stake in the case is primarily reputational. Nevertheless, it is obviously in E.T.A.'s interest to resolve all legal disputes regarding her status once and for all. For this reason, and fundamentally because counsel for the mother has failed to provide us with a record showing that trial court error occurred, the judgment appealed from is

*Affirmed.*[4]

Concurring opinion by Associate Judge REID, with whom Associate Judge SCHWELB, joins:

I join Judge Schwelb's opinion. I empathize with our dissenting colleague's concern that the mother in this case not be penalized for her attorney's failure to take steps to reconstruct the record of proceedings on March 26, 2002, and April 29, 2002. I do not take issue with Chief Judge Wagner that "[t]he circumstances [here] are

analogous with a mentally ill client who is helpless to protect herself when the lawyer fails to pursue an available avenue for relief," citing *Godfrey v. Washington*, 653 A.2d 371, 373 (D.C.1995). However, I do not believe that the legal principle articulated in *Godfrey*—that "the trial court is expected to reflect the helpless true party's interest by softening the sanction, if any, that it imposes, at least where this may be done without prejudicing other compelling countervailing interests," *id.* at 373—is applicable in this case. I believe there is a countervailing interest that would be prejudiced by remanding this case to determine whether the record can be reconstructed for purposes of appellate review. Timely disposition of Family Court matters, in my view, is such a countervailing interest. The proceedings at issue here concluded in March and April 2002, and a remand with the hope that the record could be reconstructed, would prolong rather than facilitate final disposition. Therefore, I believe it appropriate on the facts of this case to rely on the general principle that "the acts and omissions of counsel are imputed to the client even though detrimental to the client's cause." *Id.* (citation committed).

WAGNER, Associate Judge, dissenting:

In this case adjudicating appellant's minor child, E.T.A., to be neglected, we are unable to review her claims of error because a transcript of the trial court's proceedings could not be prepared due to a malfunction in the court's equipment.

---

**4.** In her dissenting opinion, Chief Judge Wagner argues that the failure of the mother's attorney to utilize the procedures available under D.C.App. R. 10(d) should not be attributed to the mother in light of the mother's "ongoing mental incapacity and inability to assume her parental responsibilities." No claim to this effect has been presented to us on the mother's behalf. In any event, given

the purely reputational nature of the mother's stake in this appeal, the pendency of the adoption case, and the other factors discussed in this opinion, the compelling interest of E.T.A. in having her future resolved without further delay, especially the protracted delay of a new trial, persuades us that, on this record, the mother's mental condition should not be decisive.

While this court has held that an appellant's failure to pursue reconstruction of the record through procedures available under D.C.App. R. 10(d) will preclude a claim that the record is insufficient for review, *see Cole v. United States*, 478 A.2d 277, 283–84 (D.C.1984) (citation omitted), the imposition of the forfeiture is inappropriate under the circumstances presented in this case. Here, the child was adjudicated to be neglected because of appellant's *"ongoing mental incapacity* and inability to assume her parental responsibilities." Although generally the acts or omissions of counsel are imputed to the client, "we have qualified that doctrine in cases in which attorneys or guardians have failed adequately to represent the interests of their minor clients or wards." *Haqq v. Dancy–Bey,* 715 A.2d 911, 913 (D.C.1998); *Godfrey v. Washington,* 653 A.2d 371, 373–74 (D.C.1995) (holding that dismissal of complaint for violation of discovery order should have been without prejudice because the actual party injured was a minor); *Jones v. Roundtree,* 225 A.2d 877, 878 (D.C.1967) (reversing dismissal of minor's complaint notwithstanding the inexcusable neglect of his attorney because this court was unwilling to visit attorney's defaults on a minor client). The circumstances are analogous with a mentally ill client who is helpless to protect herself when the lawyer fails to pursue an available avenue for relief.[1] *See Godfrey,* 653 A.2d at 373 ("The few cases considering the issue recognize that those parties who are not able to protect themselves should not suffer because the representative, who is responsible for protecting them, has defaulted."). Therefore, I would remand the case to the trial court for a determination of whether the record can be reconstructed sufficient to permit

appellate review, and if not, for a new trial. *See Cole,* 478 A.2d at 285. The intervening events outlined in the majority opinion, although compellingly presented, in my view, are not properly before this court and should not determine whether appellant should be accorded her due process right to appellate review. Although I share with my colleagues concern about the impact of the delay associated with a remand, in my opinion, that factor should be evaluated in the trial court where there is an opportunity for a full development of the record in the neglect proceeding and any adoption proceeding. For these reasons, I respectfully dissent from the opinion of the court.

---

1. Initially, counsel for appellant apparently thought that seeking reconstruction of the record would be futile and that the issues could be resolved without the transcript of trial court proceedings.