In re AK. V. (No. 98–FS–1431).

In re Am. V. (No. 98–FS–1449).

In re An. V. (No. 98–FS–1450).

P.V., Appellant.

Nos. 98–FS–1431, 98–FS–1449, 98–FS–1450.

District of Columbia Court of Appeals.

Submitted Jan. 27, 2000.

Decided March 23, 2000.

Judith A. Lovelace, appointed by this court, was on the brief for appellant.

Rhonda Blank, appointed guardian ad litem by this court, filed a memorandum in lieu of brief.

Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, Assistant Corporation Counsel, were on the brief for appellee.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

This is an appeal from a denial by the Family Division of the Superior Court of appellant's motion to file a late appeal of a finding of neglect and disposition order removing appellant's children from her custody. Fifty days after the disposition order was entered, appellant moved for an extension of time to file an appeal on the grounds that she did not have timely notice of the court's disposition and that she had not been able to confer with her attorney in time to file a timely appeal. The trial court denied the motion, finding that the circumstances alleged by appellant did not constitute excusable neglect justifying an extension to file an untimely appeal. We remand the case for a hearing and further fact-finding on the record as to the circumstances surrounding appellant's failure to timely file her appeal, and for consideration of the motion consistent with the factors discussed in this opinion.

## I. Background

### A. Facts

Appellant, P.V., is the mother of Am.V., born in 1988, Ak.V., born in 1992, and

An.V., born in 1997. On March 10, 1997, the police received a report that appellant had left Ak.V., then four years old, at home alone with the door unsecured, and an unidentified adult male had entered the apartment to sleep on the couch. P.V., who had a history of drug abuse, was in custody after having been arrested that morning for destruction of property. Ak. V.'s older sibling, then eight years old, and younger sibling, then two months old, were with a neighbor. The police removed Ak.V. and the two siblings, and contacted the Department of Human Services (DHS).

The District of Columbia filed petitions in the Family Division of Superior Court alleging the three children were neglected pursuant to D.C.Code § 16–2301(9)(B) and (C) (1997).[1] Appellant was served with copies of the neglect petitions, and the court immediately appointed an attorney to represent her in the proceedings. The court also appointed a guardian ad litem to represent the children, and another attorney to represent the fathers of each of the children.[2] The children were temporarily placed with their maternal grandmother. Appellant was granted visitation supervised by the grandmother, and An.V.'s father was granted unsupervised visitation.

## B. Proceedings

After an initial hearing, in a pre-trial order dated April 1, 1997, the Family Divi-

sion found that there was probable cause to believe that the children were neglected, but released the three children to appellant's care on the conditions that appellant undergo regular drug testing, attend mental health appointments, receive parenting assistance, and permit daily visits by the maternal grandmother.[3]

Appellant and her counsel appeared for a status hearing on December 15, 1997, at which a trial date was scheduled for January 21, 1998. Neither appellant nor An. V.'s father appeared for the neglect trial on January 21, 1998, but both were represented by counsel. The court adjudicated all three children to be neglected pursuant to § 16–2301(9)(B) and (C). At the conclusion of the trial, in the presence of counsel for the parties, the court set the disposition hearing for March 6, 1998.

On February 5, 1998, the guardian *ad litem* moved for an emergency hearing for the purpose of considering removal of the children from appellant's care. The motion alleged that some time after the date of the trial, appellant had stopped attending the required parenting classes and was reported to be using drugs, that the children were not picked up from school one day, and that the social worker was being denied access to the children to monitor their safety. At the emergency hearing, on February 6, 1998, at which appellant

---

1. The District of Columbia Code defines the term "neglected child." *inter alia,* as a child:

 (B) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian; or (C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity[.]
 D.C.Code § 16–2301(9) (1997).

2. The father of An.V. frequented the children's home. The father of Ak.V. was thought to be incarcerated, but his exact

whereabouts were unknown. The father of Am.V. was incarcerated in Virginia.

3. The record does not indicate to what extent appellant complied with these conditions. However, the court's findings of fact indicate that appellant had been participating in the "Symbas Program" to address her drug and alcohol addiction and had participated in regular drug testing until mid-January 1998, immediately preceding the trial, when she relapsed into cocaine use. The trial court also found that appellant "refused to work with her social workers," although the guardian *ad litem* had asserted in her motion for Emergency Hearing that appellant had been cooperative in the weeks preceding trial as a condition of maintaining the children in her home.

did not appear but was represented by her counsel, the court ordered the children placed in shelter care.

The disposition hearing was held on March 6, 1998. Appellant did not appear, but was represented by her counsel who requested a continuance for reasons not apparent from the record. The continuance was denied. By order docketed March 9, 1998, the three children were committed to the custody of DHS for an indeterminate period not to exceed two years with visitation rights for the mother,[4] and a custody order was issued for the youngest child, An.V, who apparently had not yet been removed to shelter care. On March 31, 1998, An.V., was taken into care and placed at St. Ann's infant home. On April 8, 1998, DHS notified the court that An.V. had been returned to DHS' custody by filing a "Request for the Withdrawal of Custody Order." The trial court scheduled a status hearing for April 10, 1998. At that hearing, upon the government's motion, the court suspended appellant's visitation rights with An.V. The order stated that it had been entered "after hearing argument on behalf of all parties concerned," even though neither appellant nor her counsel were present.[5]

On April 28, 1998, appellant's counsel filed an unopposed motion requesting an extension of time to file an attached notice of appeal.[6] The motion contended that [t]he mother reports that she received no personal notice of the disposition hearing and was unaware of what transpired at that hearing until her son, [An.V.], was removed from her care during the week of April 6. She telephoned her attorney soon thereafter and requested that the case be appealed. He was not able to meet with her to discuss this motion until April 27. Thus the failure to file the Notice of Appeal within 30 days of the disposition hearing is excusable neglect.

The trial court denied the motion without a hearing on August 26, 1998, four months after it was filed. Docketed the next day with the court's order denying the motion to late-file an appeal were the court's written findings of fact and conclusions of law supporting the January 21, 1998, neglect adjudication.[7] Appellant timely noted an appeal from the denial of her motion.

## II. Excusable Neglect

 The order appealed from was signed on March 6, 1998, and entered on the docket on March 9, 1998. The rules of appellate procedure require notice of appeal to be filed within thirty days of entry of the disposition order, *see In re A.B.*, 486 A.2d 1167, 1168 (D.C.1984), *i.e.*, in this case by April 8, 1998.[8] The thirty-day time

---

4. Assuming no subsequent orders, the maximum duration of the children's commitment to the custody of DHS would be about to expire. Even if the children were no longer in DHS' custody, the matter of the underlying neglect finding would not be moot. *See In re E.R.*, 649 A.2d 10, 11 (D.C.1994) (holding that an appeal of a determination of neglect is not moot even if the child is no longer under the jurisdiction of the court "because the adjudication of neglect has significant potential collateral consequences for the mother").

5. We do not know whether appellant or her counsel were notified of the hearing or of the government's motion to suspend appellant's visitation with her children. The government's motion is not in the record, nor does the jacket indicate with respect to this hearing, as it does with respect to others, that "notices [are] to issue" to the parties.

6. The notice of appeal referred to in the motion is not included in the record on appeal.

7. The Neglect Rules of the District of Columbia Superior Court provide:

> [a] finding of neglect ... shall be accompanied by a written statement of the specific facts on which the finding is based, including the allegations of the petition which have been found to be true.

Super. Ct. Neg. R. 16(b) (1999).

8. The Rules of the District of Columbia Court of Appeals provide in pertinent part:

> (a) *Civil cases.* (1) Notice of appeal. A notice of appeal in a civil case shall be filed with the Clerk of the Superior Court within thirty days after entry of the judgment or order from which the appeal is taken unless

limit is mandatory and jurisdictional with this court, *see Berenbaum v. Berenbaum,* 638 A.2d 681, 683 (D.C.1994) (citing *In re C.I.T.,* 369 A.2d 171, 172 (D.C.1977)), but the trial court may extend the time for filing a notice of appeal up to thirty days for excusable neglect. *See* D.C.App. R. 4(a)(4) (1999).[9] To demonstrate excusable neglect, appellant must show lack of knowledge of entry of a judgment, extraordinary circumstances such as physical disability or unusual delay in transmission of the mail, or "unique circumstances." *See Berenbaum,* 638 A.2d at 683; *Pryor v. Pryor,* 343 A.2d 321, 322 (D.C.1975).

Appellant filed her request for extension of time on April 28, 1998, approximately three weeks after the thirty-day time to appeal had expired. Appellant claimed therein that she did not timely know of the disposition hearing or its result and that when she did find out, soon after her youngest child was removed from her care the week of April 6, she promptly instructed her attorney to file an appeal and attempted to meet with him, but he was not available for almost three weeks. The issue before the trial court was whether appellant's motion showed that she had done "all [s]he could do under the circumstances to perfect an appeal within the time prescribed by the rules." *(John E.) Thomas v. United States,* 586 A.2d 1228, 1229 (D.C.1991) (citations omitted).

We review the trial court's denial of an extension of time to file an appeal for abuse of discretion. *See Thomas,* 586 A.2d

at 1230. *Cf. Snow v. Capitol Terrace, Inc.,* 602 A.2d 121, 124 (D.C.1992) (affirming a finding of excusable neglect which *permits* a late appeal absent a "clear abuse of discretion") (citing *Trezevant v. Trezevant,* 403 A.2d 1134, 1136 (D.C.1979) and *Gooch v. Skelly Oil Co.,* 493 F.2d 366, 368 (10th Cir.)).[10] Here, the court found no excusable neglect without a hearing and barred the appeal by denying an unopposed motion for an extension. Under the circumstances of this case, the first in which we have considered a trial court's denial of a request to extend the time for appeal for excusable neglect in the context of a neglect proceeding and removal of children from parental custody, we conclude that it was an abuse of discretion for the trial court summarily to deny the requested extension.

First, if what appellant claimed in her motion is true, she was diligent in pursuing her appeal, and may be able to show excusable neglect. According to appellant, she immediately spoke with her attorney after learning of the court's disposition and instructed her attorney to appeal. When her attorney told her to wait three weeks, she met with him on his schedule, and filed the request for an extension to file an appeal one day after the appointment with her attorney.

Appellant argues that she did not have actual notice of the final disposition. We cannot say whether or not that is so based on the record before us, because the court

a different time is specified by the provisions of the District of Columbia Code.
D.C.App. R. 4(a)(1) (1999).

9. The appellate procedure rules provide:
Excusable Neglect. Upon a showing of excusable neglect, the Superior Court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by paragraph (1). Such an extension may be granted before or after the time otherwise prescribed by paragraph (1) has expired, but if a request for an extension is made after such time has expired, it shall be made by motion with

such notice as the court shall deem appropriate.
D.C.App. R. 4(a)(4) (1999).

10. *Gooch* construed Federal Rule of Appellate Procedure 4(b), but cases interpreting the Federal Rules are persuasive authority and may be construed *in pari materia* in defining excusable neglect under our local rules where the language of the local rule at issue and the language of the corresponding federal rule are essentially the same. *See Thomas,* 586 A.2d at 1230 n. 3 (citing *West v. United States,* 346 A.2d 504 (D.C.1975)); *Trezevant,* 403 A.2d at 1136 n. 1.

below did not undertake a hearing or make findings of fact on the record to support or refute this assertion. From what we do have before us, it is entirely possible that appellant did not know of the disposition hearing, not having attended the trial or the emergency hearing in February. We do not know why she was not in court on these dates. Although the court characterized appellant as having been "purposely absent" with an intention to "interfere with the exercise of the Court's jurisdiction," indicating "defiance" and "resistance," the only facts we have to support such findings are her absences themselves; there are no facts on the record which would demonstrate a purposeful or defiant state of mind on the part of appellant. The record could be interpreted otherwise as, prior to the trial, appellant appeared at six scheduled hearing dates including the date originally scheduled for trial, and at an emergency hearing.[11] We note also that at the disposition hearing, appellant's counsel requested a continuance, but the record does not reveal for what purpose that continuance was requested or why the trial court denied the request.[12] The present record is simply insufficient on the primary question before the trial court: why did appellant fail to note a timely appeal?

█ We do not mean to suggest that when considering a request for extension of time to file an appeal a trial judge may not take into account what he or she may have observed of movant's prior behavior, including any failure to appear for scheduled court dates. Rather, trial judges must focus primarily on the particular facts of an appellant's failure to timely file an appeal, informed, as appropriate, by all they know about the movant before them, in making sufficient findings of fact on the record to assist this court in determining whether the appellant has made a showing of excusable neglect.[13]

█ Second, we disagree with the trial court's reasoning that even if appellant did not herself have notice of the trial court's disposition order and consequent running of the time for appeal, the fact that her counsel had notice is sufficient, without more, to deprive appellant of the right to appeal. The trial court noted in its order denying the requested extension that appellant was "conscientiously represented at all proceedings by her appointed lawyer who was fully apprised of all orders of the Court and all continued dates." Ordinarily, the knowledge of counsel as to court-ordered appearances and deadlines is imputed to the client. *See Godfrey v. Washington,* 653 A.2d 371, 373 (D.C.1995) ("acts and omissions of counsel are imputed to the client even though detrimental to the client's cause"). And, as the court pointed out, generally speaking "lack of knowledge of the entry of judgment occasioned by failure to receive the clerk's notice does not, without more, constitute grounds for a finding of excusable neglect." *Pryor,* 343 A.2d at 323.

We are concerned here with a neglect proceeding. The District of Columbia Code and the court rules governing neglect proceedings make clear the importance of notice to parents and parental

11. The mother was present for an initial hearing on March 10, 1997; a status conference on April 1, 1997; the original trial date June 23, 1997; a status hearing October 14, 1997; an emergency hearing on November 21, 1997; and a status hearing December 12, 1997. She did not appear at the status hearings on May 1, 1997, or September 4, 1997, but there is no indication in the record as to why she did not attend.

12. We note that the trial court found that appellant had relapsed into cocaine use in mid-January 1998, which would be just prior to the trial scheduled for January 21, 1998. See *supra* note 4.

13. According to the court jacket, the judge who presided over the neglect proceeding took over the case in January 1998. Two other trial judges had presided over the pretrial proceedings during the previous year and observed appellant when she attended six of eight scheduled hearings. See *supra* note 11.

participation in the proceedings. The parents of an allegedly neglected child, if indigent, are entitled to appointed counsel at "all critical stages of the proceedings," *see* D.C.Code § 16–2304(b)(1) (1997), and are entitled to notice of execution of a custody order, *see* Super. Ct. Neg. R. 6(a)(1), the hearing to determine the necessity for shelter care, *see id.*,[14] the initial (probable cause) hearing on the neglect petition, *see* Super. Ct. Neg. R. 6(b), and the fact-finding hearing to adjudicate neglect, *see* Super. Ct. Neg. R. 7(a). *See also In re A.H.*, 590 A.2d 123, 131 (D.C.1991) (describing prior neglect rules).[15] The rules specifically state that at the commencement of the initial appearance and fact-finding hearing, the court shall determine whether the required notice of the hearings was given to the parents and shall enter this determination in the record. *See* Super. Ct. Neg. R. 12(a) and 16(a); *In re A.H.*, 590 A.2d at 131. With respect to the fact-finding hearing to adjudicate neglect, the rules provide that "[i]f the judicial officer finds that service has been effected, but a party is not present, the judicial officer may proceed with the hearing if counsel for the party is present." Super Ct. Neg. R. 16(a). It is not apparent from the record before us that such determinations were made in this case.[16]

14. The notice must include "a statement regarding the [parent's] right to be present." Super Ct. Neg. R. 6(a)(2).

15. Parents are also entitled to notice of termination of any disposition orders. *See* Super Ct. Neg. R. 21(e).

16. We do not have the transcripts for the shelter care or adjudication hearings.

17. Where a criminal defendant's counsel has missed a deadline for an appeal, the court will not permit the original untimely appeal, but the defendant may succeed by arguing that counsel's failure to appeal denied him or her the effective assistance of counsel guaranteed by the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For example, if the trial court found that a criminal defendant had timely instructed counsel to file an appeal, but counsel did not, that defendant

Most important for purposes of this appeal, the rules require that a copy of the final disposition order "shall be furnished to *the parties and their attorneys.*" Super. Ct. Neg. R. 21(b) (emphasis added).

■ Here, the allegation is not that appellant was not represented by counsel, but that appellant did not have actual notice of the disposition hearing date, the final disposition of the case or the deadline for filing an appeal. If the allegations are credited, we do not know whether the reason is that a copy of the order was not served on appellant as required by the rules, or counsel failed to properly advise appellant, or that there was some missed communication between counsel and appellant. In contrast to a criminal case where a defendant can be relieved from the consequences of counsel's deficiencies,[17] in a civil case the usual remedy for misfeasance or nonfeasance on the part of counsel is for the aggrieved party to bring a malpractice suit against the attorney seeking monetary damages. *See R.D.H. Communications, Ltd. v. Winston,* 700 A.2d 766, 773 (D.C. 1997). That course does not provide an apt remedy here, where the effect of a failure by counsel to protect the client's rights may be loss of the ability to contest

would be entitled to vacation of his sentence and resentencing, restoring his right to appeal. *See Jackson v. United States*, 626 A.2d 878, 881 (D.C.1993). The Sixth Amendment only affords a right to counsel in a criminal proceeding, not a civil action. *See* U.S. Const. amend. VI. Neglect proceedings are not criminal in nature, *see In re J.J.Z.*, 630 A.2d 186, 191–92 (D.C.1993), *cert. denied,* 511 U.S. 1072, 114 S.Ct. 1651, 128 L.Ed.2d 370 (1994), so appellant has no Sixth Amendment right to the effective assistance of counsel, although she has a statutory right to counsel, *see* D.C.Code § 16–2304(b)(1) (1997). *But see Thompson v. Atlantic Bldg. Corp.*, 107 A.2d 784, 785 (D.C.1954) ("[T]he right to effective assistance of counsel in the course of a trial is as necessary and important to a civil litigant as to an accused in a criminal proceeding."). Once her appeal is barred, appellant cannot later make the argument that her counsel was ineffective and hope for a new trial on the merits.

a court-ordered separation of child from parent. Monetary damages are wholly inadequate in a neglect case.

 In cases where the attorneys or guardians *ad litem* have failed adequately to represent the interests of their minor clients or wards, we have qualified the doctrine that acts and omissions of counsel are attributed to the client. *See Haqq v. Dancy–Bey,* 715 A.2d 911, 913 (D.C.1998) (citing *Jones v. Roundtree,* 225 A.2d 877 (D.C.1967)). We do not "visit the sins of an attorney on his client, especially when that client is a minor." *Id.* (quoting *Roundtree,* 225 A.2d at 878). Here, of course, the attorney was representing the parent, not a minor, but the nature of a neglect proceeding is such that the same reasoning is appropriate. Although a neglect proceeding is remedial and focuses on the situation of the child rather than the parent, *see In re J.J.Z., supra* note 17, 630 A.2d at 191, the rights of a parent are not to be overridden lightly, *see In re L.W.,* 613 A.2d 350, 355 (D.C.1992). An adjudication of neglect may involve a determination that a parent has engaged in unacceptable behavior; a finding of neglect is not a conviction, however, but a means to protect the child's best interests. *See In re J.J.Z., supra* note 17, 630 A.2d at 192.

Recognizing that the important bond between parent and child can be frayed by a determination of neglect and separation of the child from the parent, *see id.* (noting that the consequences of a neglect pro-

ceeding involve "governmental intrusions into the fundamental and constitutionally protected right of a natural parent to raise his or her child"), we are unwilling to conclusively impute counsel's knowledge to appellant with the result that appellant's right to judicial review is lost, and order expedited consideration of this case.[18]

Finally, we note that the date appellant claims to have instructed her counsel to file an appeal (the week of April 6, 1988) may well have been within the thirty-day appeal period, which lapsed April 8, 1998. *Cf. Thomas,* 586 A.2d at 1230 (noting in affirmance of denial of a motion to extend time that "[a]ppellant's motion did not even allege that he had instructed counsel to file a notice of appeal"). Moreover, appellant's motion to extend the time to appeal was filed within thirty days of when appellant claimed to have actual notice of her right to appeal, and within sixty days of the trial court's disposition that she sought to challenge on appeal. This court has held that the purpose of Rule 4 "is to limit [to] a period of 60 days the time in which a notice of appeal may be filed." *See Washington Metro. Area Transit Auth. v. Brown,* 619 A.2d 1188, 1191 (D.C. 1993) (quoting *Joseph v. Parekh,* 351 A.2d 204, 205 (D.C.1976)) (commenting on the rule's former incarnation as R. 4 11(a)(4)). The trial court does not appear to have taken these factors into account in its consideration of appellant's request for an extension of time to file an appeal based on "excusable neglect."

---

**18.** We are aware that the District of Columbia has adopted new deadlines pursuant to the Adoption and Safe Families Act of 1997, § 302, Pub.L. No. 105–89, 111 Stat. 2115, 2128 (1997) (amending section 475(5)(c) of the Social Security Act, codified as amended at 42 U.S.C.A. § 675(5)(c) (Supp.1999)). Under the District's new legislation, within twelve months of "the first judicial finding that the child has been neglected," a "permanency hearing" must be held for the purpose of "determining the permanency plan for the child including whether, and if so when, the child will be; (1) Returned to the parent; (2) Placed for adoption ...; (3) Placed pursuant to an award of legal custody; or (4) Placed, because of compelling circumstances in another planned permanent living arrangement ...." D.C. Law No. 13–56, § 301(a) & (e), 46 D.C.Reg. 8870, 8883, 8886 (1999) (to be codified at D.C.Code §§ 16–2301(a)(28) and –2323 (A temporary act, effective on March 7, 2000, for 120 days. Permanent legislation was pending before the D.C. Council at the time of this opinion.)). This deadline puts a premium on prompt action by the trial and appellate courts. Here, the court's written findings, which should have "accompanied" the neglect finding, issued seven months after the adjudication of neglect and ten weeks after the disposition order. See *supra* note 4.

### III. Remand

We note several items that, on remand, would benefit from a full hearing. The trial court asserted, without making a factual finding on the record, that appellant willfully absented herself from the trial, emergency hearing and disposition hearing. Although appellant had notice of the trial date, we do not know the reasons for appellant's absence from the trial or whether she had knowledge of the dates of the emergency hearing, custody proceeding, or disposition hearing.

The trial court assumed that appellant had notice of the emergency hearing held at 9:30 in the morning on February 6, 1998, but the record shows that the guardian's motion requesting the hearing was made at 4:00 in the afternoon on the previous day, and was not granted until the day of the hearing itself. The memorandum of the guardian *ad litem* in lieu of brief on appeal makes clear that appellant was in touch with the DHS social worker later on the day of that hearing. Although appellant's counsel was present at the hearing, there is no finding on the record as to whether counsel—or anybody else—actually notified appellant before the hearing took place.

The guardian's memorandum on appeal also contends that appellant purposely did not abide by the shelter care order of February 6, 1998, requiring that DHS workers remove the children from school on February 9, 1998. This memorandum was not before the trial court and is not substantiated by any evidence in the record.

The trial court assumed that appellant had notice of the March 6, 1998, disposition hearing because her counsel was present and had notice. We have already rejected the advisability of such an imputation in the context of a neglect hearing, especially since the neglect rules require that the parties themselves, in addition to their attorneys, receive a copy of the disposition order. *See* Super. Ct. R. 21(b)(1). Furthermore, the record shows that appel-lant's counsel moved for a continuance, but no reasons for that motion or for its denial are in the record. The court should inquire whether appellant had actual notice of the disposition hearing, the reasons for her absence and whether appellant understood the nature of that hearing.

The guardian argues on appeal that appellant should have been alert to the court's final disposition removing the children from her care because she had direct notice that the trial court had already taken action adverse to her parental interests when she was advised that shelter care orders were issued for her children, and two of the children were removed from her custody. In this case, it has not been established, via a fact-finding, that the social worker so informed appellant. It is also not clear from the record that the older children were removed from appellant's direct care, since, according to the guardian's memorandum on appeal, they were located at and taken from their school. Even though the children were in appellant's legal custody, the children may have been staying with appellant's mother or brother as they had during the previous year pursuant to a court order.

Even if appellant knew the date of the disposition hearing, she may not have understood the final nature of the adjudication. During the previous year the court made a probable cause finding of neglect and her children were removed, but only for a very short time, after which they were returned to her care. Under these circumstances without thorough advice from her counsel, appellant may have reasonably expected a similar result from the March 1998 adjudication. The court should inquire whether counsel disabused her of any faulty assumptions she may have had about the nature of the proceeding.

Finally, we note that appellant's assertion that she did not know of the result of the disposition hearing until the week of April 6, 1998, is not on its face incredible.

At the time of the disposition hearing her two older children were not in her custody but in shelter care, so she may not have known that the court had ordered them committed to DHS custody. As for An.V., appellant's youngest child, the trial court based its denial, in part, on the ground that appellant was "evidently" hiding the infant, and that appellant "appears" to have avoided the proceedings. The record does not show from whose physical care An.V. was removed on March 31, 1998. If the trial court's view was that An.V. was being hidden—presumably at a location other than appellant's home—it may be that appellant's first actual notice of the child's removal was the week of April 6, as she claims.

In sum, it is possible that appellant may be able, under the circumstances of this case, to show "excusable neglect" for not perfecting her appeal within the time limits prescribed by the rules. We remand the case for an expedited hearing and trial court findings specifically focused on the reasons why appellant did not file a timely appeal. The trial court should address, *inter alia,* 1) the reasons for appellant's failure to appear at the trial on January 21, 1998, for which appellant had notice; 2) whether appellant failed to receive actual notice from the court or her attorney or any other reasons for appellant's failure to appear at the emergency hearing on February 6, 1998, or the disposition hearing on March 6, 1998; and 3) the reasons for which appellant's counsel requested a continuance on March 6, 1998, and the court's reasons for denying the continuance. Based on these findings, the trial court should determine whether there is excusable neglect under D.C.App. R. 4(a)(4), considering that counsel's knowledge of the time to appeal is by itself insufficient to bar appellant's right to appeal and that the motion for an extension of the time to appeal was filed within sixty days of the order appellant wishes to appeal.

*So ordered.*